No. 84–550.   INTERSTATE COMMERCE COMMISSION *v.* BRAE CORP. ET AL.; and

No. 84–867.   CONSOLIDATED RAIL CORPORATION *v.* AHNAPEE & WESTERN RAILWAY CO. ET AL.   C. A. D. C. Cir.   Certiorari denied.   JUSTICE O'CONNOR took no part in the consideration or decision of these petitions.   Reported below: 238 U. S. App. D. C. 352, 740 F. 2d 1023.

JUSTICE WHITE, with whom JUSTICE REHNQUIST joins, dissenting.

In the Staggers Rail Act of 1980, 49 U. S. C. § 10101 *et seq.*, Congress took a significant step away from the traditionally pervasive federal regulation of railroads.   Displaying evident distrust of the regulatory model, the Act includes a 15-point National Rail Transportation Policy.   § 10101a.   Among the policies identified are "(1) to allow, to the maximum extent possible, competition and the demand for services to establish reasonable rates for transportation by rail; [and] (2) to minimize the need for Federal regulatory control over the rail transportation system." *Ibid.*   The Act also provides that the Interstate Commerce Commission (ICC) "shall exempt" persons or transactions from an otherwise applicable regulation if the regulation "is not necessary to carry out the transportation policy of section 10101a" and "either (A) the transaction or service is of limited scope, or (B) the application of a provision of this subtitle is not needed to protect shippers from the abuse of market power." § 10505(a).

These cases arise out of an ICC rulemaking regarding the deregulation of boxcar traffic. *Exemption from Regulation—Boxcar Traffic*, 367 I. C. C. 423 (1983); *Alaska Railroad Certification*, 367 I. C. C. 745 (1983). The Commission granted far-reaching exemptions pursuant to § 10505(a). First, it eliminated ceilings on boxcar rates. Particularly in light of economic pressures caused by competition from the trucking industry, the Commission found that rail carriers lacked market power and that regulation of boxcar rates was not necessary to further the National Rail Transportation Policy. Second, it extended this exemption to "joint rates." A joint rate is the charge to a shipper for transportation over connected lines by more than one carrier. The revenues are divided among the carriers pursuant to joint rate agreements, which are regulated by 49 U. S. C. § 10705. The Commission concluded that elimination of joint rate regulation would not lead to the demise of joint rates, long haul routes, or cooperation between large and small carriers. Third, the Commission exempted negotiated agreements from its "car hire rules." Under the otherwise applicable rules, the owner of a boxcar could charge a per diem rental fee to the railroad with control over the boxcar for the entire time the car was on that railroad's tracks, even if it was empty and still. The Commission found that in practice these rules resulted in extreme inefficiency, higher operating costs, an incentive for excessive purchases of boxcars, and a lack of responsiveness to market conditions.

Respondents sought judicial review in the Court of Appeals for the District of Columbia Circuit. The court sustained the exemption of boxcar traffic from maximum rate regulation, but set aside the other two rulings. 238 U. S. App. D. C. 352, 740 F. 2d 1023 (1984). With regard to the joint rate exemption, it found that the Commission's consideration of the need for regulation and the possible adverse consequences of its elimination had been inadequate. Noting congressional concern about the possibility of large carriers squeezing profits from captive small carriers, it held the Commission's failure to consider the effect of joint rate exemption on the fair division of joint rate revenue among carriers' had been arbitrary and capricious. Turning to the car hire issue, the Court of Appeals, echoing the position of dissenting ICC Chairman Taylor, held that the Commission's decision was, in reality, not an exemption but a new regulation. As such, it exceeded the Com-

mission's authority under § 10505. That section was part and parcel of the Act's emphasis on the reduction of regulatory burdens and Government oversight. The joint rate "exemption," rather than leaving the contours of the car hire relationships to the market, skewed the initial economic relationship in favor of the destination carrier. This reregulation could only be accomplished pursuant to normal rulemaking procedures.

Consolidated Rail Corp., which had initially sought the rulemaking, and the Commission itself now seek review in this Court. They are supported by a brief from the United States. Several aspects of the decision below are questionable. The court's concern with the fair division of revenues between carriers is not squarely based on the statutory language, which requires only that the regulation from which an exemption is granted be "not needed to protect *shippers* from the abuse of market power." § 10505(a)(2)(B) (emphasis added). There is also an arguable inconsistency between upholding the Commission with regard to maximum rate regulation generally and affirming its view of the surrounding circumstances supporting such a ruling, while refusing to do so as to joint rates. Finally, the court's distinction between reregulation and deregulation is hard to pin down—on its face, the Commission's ruling is certainly the latter.

More generally, the fact that the battle between the court and the agency has taken place on what may be considered the latter's turf casts doubt on the decision below. It is the Commission that should be evaluating the nature of the rail transportation market and the effect and necessity of regulation.

Finally, these cases present a significant clash between an independent federal agency and a Federal Court of Appeals. The subject matter is important not only to the numerous parties but also to the Nation as a whole. These cases seem to be one episode of a larger struggle. See *ICC* v. *Coal Exporters Assn. of United States, Inc., post*, p. 1072. The court and the agency have rather divergent views of the mandate of the Staggers Act and the nature of the Commission's task thereunder. The proper implementation of that important legislation requires that these larger issues be settled.

I would grant these petitions and consolidate them for oral argument.