No. 84–884.  INTERSTATE COMMERCE COMMISSION *v.* COAL EXPORTERS ASSOCIATION OF THE UNITED STATES, INC., ET AL.; and

No. 84–885.  NORFOLK & WESTERN RAILWAY CO. ET AL. *v.* COAL EXPORTERS ASSOCIATION OF THE UNITED STATES, INC., ET AL.  C. A. D. C. Cir.  Certiorari denied.  JUSTICE O'CONNOR took no part in the consideration or decision of these petitions. Reported below: 240 U. S. App. D. C. 256, 745 F. 2d 76.

JUSTICE WHITE, with whom JUSTICE REHNQUIST joins, dissenting.

Like *ICC* v. *Brae Corp.* and *Consolidated Rail Corp.* v. *Ahnapee & W. R. Co., ante,* p. 1069, these cases involve implementation of the Staggers Rail Act of 1980, 49 U. S. C. § 10101 *et seq.* That Act begins with a 15-point National Rail Transportation Policy with a decidedly antiregulatory bent.  § 10101a.  It goes on to provide that the Interstate Commerce Commission (ICC) "shall exempt a person, class of persons, or a transaction or service" from any regulation that is not necessary to carry out the policies detailed in § 10101a or to "protect shippers from the abuse of market power."  § 10505(a).

Pursuant to this provision, the ICC exempted the rail transportation of coal bound for export from all regulation under the Interstate Commerce Act.  *Railroad Exemption—Export Coal,* 367 I. C. C. 570 (1983).  In the view of the Commission, relief from regulation would lead to improved efficiency, stronger railroads, and greater pricing flexibility.  The resulting benefits would promote a variety of goals set out in § 10101a.  In addition, continued regulation was not needed to protect against abuse of market power by the railroads.  They had an interest in the shippers' success, and the competitive international coal market would prevent them from raising prices so high that producers would not be competitive abroad.  In addition, as experience had shown, the shippers formed a concentrated industry with bargaining power essentially equal to that of the railroads.  The Commission also noted that antitrust remedies were available should the railroads abuse what market power they had, and that the railroads were unlikely to do so even if they could because the Commission would respond by revoking the exemption.

The Court of Appeals for the District of Columbia Circuit vacated and remanded.  *Coal Exporters Assn. of United States*

v. *United States,* 240 U. S. App. D. C. 256, 745 F. 2d 76 (1984). It found that the Commission had overlooked a key element of National Transportation Policy: "to maintain reasonable rates where there is an absence of effective competition and where rail rates provide revenues which exceed the amount necessary to maintain the rail system and to attract capital." 49 U. S. C. § 10101a(6). Reading this provision in tandem with § 10505's requirement that an exemption not subject shippers to "the abuse of market power," the court held that the Commission had too narrow an understanding of the latter phrase. As it read the Commission's opinion, there would be no abuse of market power as long as the shippers had some bargaining power, however minimal, and received some share of the economic rents, however slight. The court condemned this view as "wholly unreasonable," 240 U. S. App. D. C., at 275, 745 F. 2d, at 95, and indifferent to the Act's concern for protecting the revenues of shippers, *id.,* at 278, 745 F. 2d, at 98.

The railroads and the ICC, supported by the United States, petition for certiorari. They argue that the decision below effectively forecloses any use of the exemption provision. While this seems an overstatement, the opinion below does criticize the ICC for failing to quantify its conclusions with a precision that would appear unattainable. Moreover, the Court of Appeals involved itself in details of regulatory decisionmaking that might more properly be left to the agency. Precisely where hard bargaining leaves off and "abuse of market power" begins is the sort of issue best left to the agency's expertise, and the Court of Appeals' identification of abuse with any inequality is open to question.

More important, the decision below is set against the background of a fundamental clash between the Court of Appeals and the ICC concerning the deregulatory mandate of the Staggers Act. See *ICC* v. *Brae Corp., ante,* p. 1069. The exemption provision is the key mechanism by which that mandate is to be effected, and the Commission has had some difficulty in getting its exemptions past the Court of Appeals. As I noted in dissenting from the Court's refusal to consider the *Brae* case, the effective implementation of the Staggers Act requires that the scope of the exemption requirement be settled.

I respectfully dissent.